1018

REPUBLIC TEXTILE EQUIPMENT COMPANY OF SOUTH CAROLINA,
INC., Respondent/Appellant v. AETNA INSURANCE COMPANY and
Connelly, Beckham & Associates, Inc., Appellants/Respondents.

(360 S. E. (2d) 540)

Court of Appeals

*W. Howard Boyd, Jr.,* of *Rainey, Britton, Gibbes & Clarkson, P.A., Duke K. McCall, Jr.,* and *Jack H. Tedards, Jr.,* both of *Leatherwood, Walker, Todd & Mann,* Greenville, *for appellants/respondents.*

*Charles W. Wofford* and *Wallace K. Lightsey,* both of *Wyche, Burgess, Freeman & Parham,* Greenville, *for respondent/appellant.*

Heard March 25, 1987.

Decided Sept. 8, 1987.

LITTLEJOHN, Acting Judge:

This is an action by Republic Textile Equipment Company of South Carolina, Inc., (Republic) against Aetna Insurance Company (Aetna) and Connelly, Beckham & Associates, Inc., (Connelly, Beckham) on a fire insurance claim concerning property in North Adams, Massachusetts. In its complaint, Republic alleged six different causes of action. Connelly, Beckham asserted a cross-claim against Aetna for indemnification and damages. The trial judge directed a verdict for Aetna on the cross-claim and submitted Republic's case to the jury on a negligence cause of action only. The jury returned a verdict against both Aetna and Connelly, Beckham for $606,000 actual damages; judgment was entered on the verdict. Aetna and Connelly, Beckham appeal the denial of their post-trial motions, and Republic appeals the denial of its motion for prejudgment interest. We affirm on all issues.

## BACKGROUND

The insurance claim in dispute was on a "Modern Output Policy" (MOD policy) issued in June 1979, by Aetna to Republic. Republic acquired the policy through Connelly, Beckham.

Connelly, Beckham is an insurance agency in South Carolina authorized to place insurance coverage with approximately twenty different companies. As such, Connelly, Beckham is not required to place coverage for prospective customers with any particular insurer. In its dealings with Aetna, it was paid on a commission schedule.

Republic is in the business of buying and selling used textile machinery. The nature of this business requires Republic to insure a changing inventory of expensive equipment at different locations for relatively short periods of time. Because of Republic's fluctuating inventory, Connelly, Beckham suggested Aetna's MOD policy, which provided for variable coverage up to a specified limit and had premiums adjusted accordingly. Based on this advice, Republic purchased from Connelly, Beckham the MOD policy issued by Aetna.

Michael Diamond, Republic's owner, testified about his understanding of how the policy operated. According to Diamond, Connelly, Beckham instructed him to list Republic's "basic locations" on the policy. Republic would then receive monthly reporting forms, which it was required to complete and submit either to Connelly, Beckham or Aetna within forty-five days from the end of each month. Diamond further testified that when Republic desired coverage at other locations, it was to inform Connelly, Beckham in advance and then report the locations on the monthly reporting form. Moreover, Diamond testified that when Republic desired to increase or decrease coverage for a named location or a new location of which Republic had already notified Connelly, Beckham, it could do so by noting the change in coverage on the monthly reporting form. Connelly, Beckham's position at trial and on appeal is that these instructions were adequate to insure coverage for all values listed on the monthly reporting form.

Martha Boulware, a production underwriter for Aetna, however, testified that endorsements from Aetna were required for increases in coverages as well as the addition of new locations. Her testimony is consistent with the policy itself, which stated that the contract terms may not be changed or waived except by endorsement issued by Aetna. In fact, after the policy took effect, it was endorsed several

times to reflect increases in liability and the addition of new locations. When this happened, Republic would generally receive the endorsements along with corresponding copies of binders and certificates of insurance.

In August 1984, Republic notified Connelly, Beckham to request coverage under the MOD policy on equipment valued at $250,000 in North Adams, Massachusetts. At that time, North Adams, Massachusetts was not listed on the policy as a specified location. Republic followed up the request with a written memorandum and began listing the equipment on subsequent monthly reports. The August 1984 report incorrectly listed the new location as "North Adams, New Jersey."

Connelly, Beckham failed to notify Aetna about adding the North Adams location to the policy to secure coverage at that location. Though Republic never received any confirmation about this request, it made no follow-up inquiries. Republic later purchased additional items at North Adams, Massachusetts, but did not claim to have contacted either Connelly, Beckham or Aetna concerning coverage for these items. Republic did, however, list the equipment on the October 1984 report. The premiums collected reflected in part the fact that the equipment value was listed on the monthly reports. Aetna, however, argues on appeal that had it actually known about the North Adams equipment, it would have increased the monthly rate to account for high-risk factors at that location or not provided coverage at all.

Because of gaps in Aetna's records of Republic's monthly reports, Aetna decided to cancel the policy. A cancellation notice was mailed to Republic September 19, 1984. Connelly, Beckham intervened on Republic's behalf, and Aetna agreed to continue the coverage. Rather than reinstate the previous policy, however, Aetna issued a new policy. In issuing a new policy, Aetna did not have Republic submit a new application, but instead conferred with only Connelly, Beckham about the locations and limits of coverage. Though both Connelly, Beckham and Aetna had received the August 1984 monthly report with the incorrect listing of a new location at North Adams, New Jersey, and Republic had notified Connelly, Beckham of its request for additional coverage, the new policy did not list either North Adams, New Jersey

or North Adams, Massahusetts as a named location. The new policy did, however, show one or two changes from the previous policy.

The North Adams property was totally destroyed by fire November 1984, after the replacement policy took effect but before Republic received a copy of it. Republic made a claim through Connelly, Beckham for $545,000, representing the total resale value of the equipment at North Adams.

Connelly, Beckham advised Aetna to pay the claim in full. Aetna, however, determined there was no applicable limit of liability at the North Adams location; therefore coverage would fall under the category of "unnamed locations," for which the limit of liability was $50,000. In addition, Aetna paid $75,000 under a provision for coverage of property in transit. Thus, Aetna paid $125,000 toward the claim, refusing the remaining $420,000.

Additional facts will be discussed as they relate to the various issues on appeal.

### THE AGENCY RELATIONSHIP BETWEEN AETNA AND CONNELLY, BECKHAM

(Aetna's Appeal Only)

In its complaint, Republic alleged six causes of action against Aetna and Connelly, Beckham: (1) breach of contract, (2) fraudulent misrepresentation, (3) estoppel, (4) waiver, (5) negligence in failing to procure insurance, and (6) bad faith denial of its claim. The trial court directed a verdict for the defendants on all but the fifth cause of action, submitting Republic's case to the jury on a negligence cause of action only. The jury was given three verdict forms: one against both Connelly, Beckham and Aetna, one against Connelly, Beckham alone, and one for the defendants. The jury returned a verdict against both defendants.

Republic did not allege direct negligence on Aetna's part, its specifications of negligence being solely against Connelly, Beckham. Thus, in order for Aetna to be liable under the fifth cause of action, Republic had to show Aetna was vicariously liable for Connelly, Beckham's alleged negligence.

Aetna argues as a matter of law it cannot be held vicariously liable for Connelly, Beckham's alleged negligence. In support of this argument, Aetna emphasizes its agreement

with Connelly, Beckham establishes an independent contractor relationship.

Whatever Aetna's arrangement with Connelly, Beckham, however, the question of vicarious liability turns on the applicability of Section 38-51-10, Code of Laws of South Carolina (1976). That section provides in pertinent part as follows:

> Section 38-51-10. *Persons deemed agents of insurance companies.*
>
> Any person who ... (h) shall do or perform *any* ... act or thing in the making or the consummating of any contract of insurance for or with any such [insurance] company, other than for himself ... whether any such acts shall be done by an employee of such insurance company *or at the instance or request of such insurance company,* shall be held to be acting as the agent of such insurance company for which such act is done or risk is taken. [Emphasis ours].

In the interpretation of statutes, this court must determine and give effect to the intention of the legislature. *Bratcher v. National Grange Mutual Ins. Co.*, 292 S. C. 330, 356 S. E. (2d) 151 (Ct. App. 1987). The purpose of statutes such as Section 38-51-10 is to protect the insuring public. 44 C. J. S. *Insurance* Section 143 (1945). The statute encompasses two classes of persons: insurance company employees and those acting "at the instance or request of such insurance company." *Allstate Ins. Co. v. Smoak,* 256 S. C. 382, 182 S. E. (2d) 749 (1971). The record supports the finding that Connelly, Beckham falls within the second class; therefore, the statute applies to the present case.

Initially, when the original policy was in effect, Connelly, Beckham failed to convey the necessary information to Aetna about the North Adams, Massachusetts location. Later, however, Aetna decided to cancel the policy and issued a replacement policy after consulting only with Connelly, Beckham about the coverage. From these facts, the jury could have found the proximate cause of Republic's loss to be the events surrounding the replacement policy. Because of this possibility, we conclude the evidence supports the finding of an agency relationship between Aetna and

Connelly, Beckham under Section 38-51-10 because it shows actions undertaken by Connelly, Beckham at Aetna's request. *See Allstate Ins. Co. v. Smoak, supra* (indicating an insurance broker may be converted under the statute into an agent of the insurer if there is evidence creating an inference that he was acting at the instance or request of the company).

Aetna also argues that whether or not the statute applies to the present case, Republic failed to prove a master-servant relationship for liability to attach. The determinative question here is whether Aetna, as principal, retained the right and authority to control and direct the particular work or undertaking by Connelly, Beckham, as agent, as to the manner or means of the accomplishment. *Hutson v. Herndon*, 243 S. C. 257, 133 S. E. (2d) 753 (1963). The standard in *Hutson v. Herndon*, is more than adequately met in the present case in that Aetna's actions in issuing the replacement policy are evidence of actual control by Aetna over Connelly, Beckham's handling of Republic's insurance affairs. In connection with the replacement policy, Aetna had Connelly, Beckham update the policy and collate all the locations as named locations. In so doing, Connelly, Beckham failed to include the North Adams, Massachusetts location. Insofar as Connelly, Beckham was responding to Aetna's instructions on how the replacement policy was to be effectuated, Aetna cannot now assert a lack of control over Connelly, Beckham's methods.

We therefore hold the question of whether an agency relationship existed between Aetna and Connelly, Beckham was properly submitted to the jury.

## CONTRIBUTORY NEGLIGENCE

(Aetna's and Connelly, Beckham's Appeal)

Both Aetna and Connelly, Beckham argue that Republic was contributorily negligent as a matter of law because, they say, it failed to handle its own insurance properly. In particular, they emphasize coverage on the North Adams property.

Contributory negligence has been defined as "a lack of ordinary care on the part of a person injured by the negli-

gence of another which combines and concurs with that other's negligence and contributes to the injury as a proximate cause without which the injury would not have occurred.... If in the exercise of ordinary care, the plaintiff might have avoided the consequences of the defendant's negligence, he is the author of his own injury in the eyes of the law." *South Carolina Ins. Co. v. James C. Greene Co.*, 290 S. C. 171, 348 S. E. (2d) 617 (Ct. App. 1986). (Citations omitted.) Even where the facts are undisputed, the question of contributory negligence is for the jury unless the evidence admits of only one reasonable inference. *Rogers v. Atlantic Coast Line R. Co.*, 222 S. C. 66, 71 S. E. (2d) 585 (1952). Moreover, even where the undisputed facts tend to show both parties guilty of negligence, questions of negligence, proximate cause, and contributory negligence should be submitted to the jury if there is a fair difference of opinion as to whose act or acts produced or contributed to the injury complained of as a direct and proximate cause. *Haskins v. Fairfield Electric Coop.*, 283 S. C. 229, 321 S. E. (2d) 185 (Ct. App. 1984).

In cases involving the failure of an insurance agent or broker to maintain or procure insurance, courts have recognized an insured's prerogative to rely on the expert knowledge of the agent or broker. *Riddle-Duckworth, Inc. v. Sullivan*, 253 S. C. 411, 171 S. E. (2d) 486 (1969). Where contributory negligence has been found as a matter of law, it is usually clear that the insured has abandoned all responsibility, such as in failing to read the policy. *Keown v. Holman*, 268 S. C. 468, 234 S. E. (2d) 868 (1977); *Doub v. Weathersby-Breeland Ins. Agency*, 268 S. C. 319, 233 S. E. (2d) 111 (1977).

In the present case, it was undisputed that Diamond read the policy before the loss occurred. Moreover, the policy, though held by the trial court to be unambiguous, did not specifically contradict Connelly, Beckham's instructions concerning new locations and changes in coverage. In addition, Republic was never consulted about the replacement policy and did not receive a copy of it until after the fire. Thus, the evidence does not establish as a matter of law that Republic's behavior fell below the standard of ordinary care to which an insured is held, much less that Republic's ac-

tions were a proximate cause of its injury. We therefore hold that Aetna and Connelly, Beckham failed to establish contributory negligence on Republic's part as a matter of law.

## DAMAGES

(Aetna's and Connelly, Beckham's Appeal)

At trial, Republic attempted to show a drop in its net worth of nearly one million dollars and lost profits of about $859,000. Both Aetna and Connelly, Beckham contend Republic's damages should have been limited to $200,000. They stress that Republic at most requested coverage of $250,000 (implying Republic never requested coverage for its second purchase); therefore, its damages should be limited to that amount less the $50,000 Aetna agreed to pay under the provision covering property at an unnamed location. In addition, Aetna argues the evidence of Republic's losses was too speculative to permit recovery.

Aetna and Connelly, Beckham rely on a statement in *Riddle-Duckworth, Inc. v. Sullivan, supra,* which stated that in a case of negligent failure to procure insurance, the defendant is liable for the amount that would have been due under the policy if it had been obtained and provided the desired coverage. Losses beyond the policy's face value, however, were not an issue in *Riddle-Duckworth,* nor did that case purport to restrict recovery to the policy amount.

Because Republic's case was decided as a tort cause of action, we hold the trial judge properly instructed the jury to consider "all pecuniary losses that are a natural result of the Defendant's misconduct, regardless of whether these losses could have been anticipated" since, as the trial judge stated, " [t]he purpose of the damages is to place the Plaintiff in the same position it occupied before the Defendants' wrongdoing occurred." *See Karam v. St. Paul Fire & Marine Ins. Co.,* 281 So. (2d) 728, at 730-731, 72 A. L. R. (3d) 697, at 700 (La. 1973). ("The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage." ).

We further hold that Republic presented sufficient evidence to sustain the damages awarded. Ample data span-

ning several years were presented showing a steady upward trend in profits and net worth before the fire and the losses sustained after the fire. Republic's showing was sufficient to show lost profits by reasonable inference. *See Petty v. Weyerhaeuser Co.*, 288 S. C. 349, 342 S. E. (2d) 611 (Ct. App. 1986) (three-month period held to provide sufficient historical data to support an award for loss of profits).

## CONNELLY, BECKHAM'S CROSS-CLAIM

In its cross complaint, Connelly, Beckham asserted Aetna wrongfully refused to pay Republic's claim and alleged damages as a result of Aetna's refusal. On appeal, however, it argues only that it should have been given a chance to recover from Aetna because of direct negligence on Aetna's part in handling Republic's insurance. Allegations of direct negligence on Aetna's part were not raised in the pleadings nor were these argued to the trial judge when he considered Aetna's motion for a directed verdict on the cross-claim. Since the issue of active negligence on Aetna's part was not raised at trial, it cannot be raised for the first time on appeal. *Vause v. Mikell by Solomonic*, 290 S. C. 65, 348 S. E. (2d) 187 (Ct. App. 1986).

## PREJUDGMENT INTEREST

(Republic's Appeal)

Republic asserts error in the trial judge's refusal to award prejudgment interest on $420,000 of the jury verdict. Republic argues that this amount represents the portion of its $545,000 claim that was not paid and because the verdict exceeded this amount, it was a liquidated claim under Section 34-31-20(A), Code of Laws of South Carolina (1976), as amended. The trial judge reasoned it would be speculative to separate the total award into two elements of damages — the disallowed part of the property loss claim and the consequential damages.

In the absence of an agreement or statute, interest is not recoverable on an unliquidated claim. *Dibble v. Sumter Ice & Fuel Co.*, 283 S. C. 278, 322 S. E. (2d) 674 (Ct. App. 1984). However, where an insured seeks to recover interest under a contract of indemnity unless interest is expressly excluded by the contract, it is allowable as an element of damage.

*Myrtle Beach Air Force Base Federal Credit Union v. Cumis Insurance Society*, 507 F. Supp. 794 (D. S. C. 1981), cited with approval in *Jacobs v. American Mutual Fire Insurance Co.,* 287 S. C. 541, 340 S. E. (2d) 142 (1986); *Cogsdill v. Metropolitan Life Insurance Co.,* 158 S. C. 371, 155 S. E. 747 (1930). In this case, the judgment was not on a policy of insurance, but lay in negligence for failure to procure insurance. The plaintiff's claim included lost profits and reduction of net worth as well as the value of its uninsured property. In an action for negligence, claims for lost profits or similar consequential loss are generally regarded as unliquidated damages for which prejudgment interest will not be awarded. *Allstate Ins. Co. v. Truck Ins. Exchange,* 63 Wis. (2d) 148, 216 N. W. (2d) 205 (1974). Moreover, although the amount that would have been due on the policy had the desired coverage been provided is an element of Republic's damages, we have found no authority for the proposition that such an amount, when recovered under a negligence cause of action, becomes due by operation of law before the total damages are reduced to judgment. In our view, that element of Republic's damages is similar to medical expenses in a personal injury action, which, though frequently ascertainable, do not normally entitle a plaintiff to prejudgment interest. We therefore affirm the trial court's denial of prejudgment interest.

Affirmed.

CURETON and GOOLSBY, JJ., concur.