1777

BUILDERS TRANSPORT, INC., Appellant-Respondent v. SOUTH CAR-
OLINA PROPERTY AND CASUALTY INSURANCE GUARANTY
ASSOCIATION, Respondent-Appellant.

(415 S.E. (2d) 419)

Court of Appeals

*Susan Batten Lipscomb,* of *Nexsen, Pruet, Jacobs & Pol-
lard,* Columbia, and *Jonathan H. Waller,* of *Haskell, Slaugh-
ter & Young,* Birmingham, Ala., for appellant-respondent.*

*James C. Gray, Jr.,* and *Robert W. Foster, Jr.,* both of *Nel-*

*son, Mullins, Riley & Scarborough,* Columbia, *for respondent-appellant.*

Heard Jan. 21, 1992.

Decided March 2, 1992.

CURETON, Judge:

This is an action to determine whether the South Carolina Property and Casualty Insurance Guaranty Association (SCIGA) is obligated to pay additional sums to Builders Transport, Inc. pursuant to the provisions of the South Carolina Property and Casualty Insurance Guaranty Association Act. The action involved two separate matters identified as the "Scott claim" and the "Mintz-Petrie claim." The trial court heard the case on summary judgment. We affirm the decision of the trial court.

## I.

From January, 1983, to approximately December, 1985, Builders Transport, Inc., was insured under a general liability policy issued by Carriers Insurance Company of Des Moines, Iowa. Builders Transport is a long haul trucking company with its principal place of business in South Carolina. The Carriers Insurance policy provided Builders Transport with $9,900,000 of personal injury liability coverage for each occurrence. Carriers Insurance agreed to indemnify Builders Transport up to the limits of coverage for damages Builders became legally obligated to pay because of personal injury. In the last quarter of 1985, Carriers Insurance became insolvent and was placed in liquidation proceedings by the Iowa Commissioner of Insurance.

After Carriers Insurance became insolvent, SCIGA undertook its statutory obligation to assume responsibility for adjusting and payment of "covered claims" which were asserted against Builders Transport and were within the coverage of the Carriers Insurance policy and the statutory definition of "covered claim." The issue concerning the "Scott claim" is the interpretation of "covered claim" under S.C. Code Ann. Section 38-31-20(6) (Rev. 1989).

On January 31, 1985, a Builders Transport truck was involved in an accident with an automobile driven by Alan

Scott. As a result of the accident, Scott was killed and his wife and two children were injured. On December 10, 1985, a lawsuit asserting four causes of actions was filed in Ohio against Builders Transport. The four causes of action were three claims for personal injury of Mrs. Scott and the children and one claim for the wrongful death of Alan Scott. All claims of the Scott family were settled in 1987 by Builders Transport for a total of 1.2 million dollars. SCIGA does not dispute the reasonableness of the settlement. According to the stipulation of the parties, the Ohio Probate Court distributed the settlement in equal parts of at least $300,000 each to the two children and to the wife of Alan Scott, individually and as executrix of the estate of Alan Scott.

SCIGA recognized the three individual claims for personal injury and agreed to contribute $150,000 to the wife's claim and $25,000 each to the two children's claims. SCIGA also agreed to contribute the statutory maximum of $300,000 for the wrongful death claim. However, Builders Transport asserts it is entitled to recover from SCIGA a maximum of $900,000 for all claims. Thus, in this suit Builders Transport seeks to recover approximately $400,000 which is the difference between what Builders Transport claims it is entitled to recover (approximately $900,000) and what SCIGA agreed to pay (approximately $500,000).

The trial court heard the matter on a motion for summary judgment. The parties stipulated the facts of the case. As the court stated in its order, "the only issue before this [c]ourt is the legal question of whether a wrongful death claim is but one 'covered claim' as that term is defined . . . or whether the number of beneficiaries entitled to proceeds from a wrongful death claim determine the number of 'covered claims' under the [statute]." The court reviewed the Ohio wrongful death statute as well as cases from other jurisdictions.[1] The court concluded the wrongful death of Mr. Scott was a single injury creating a single "covered claim" and therefore SCIGA was entitled to judgment.

At oral argument, Builders Transport emphasized its reliance upon the authority of *Wood v. Shepard.*[2] In *Wood,* the

---

[1] This case was tried, briefed, and argued on the premise Ohio law applied.

[2] *Wood v. Shepard,* 38 Ohio St. (3d) 86, 526 N.E. (2d) 1089 (1988).

Ohio Supreme Court interpreted the Ohio wrongful death statute in the context of the Ohio underinsured motorist statute and an insurance policy providing for split limits of coverage. The insurance policy provided underinsured motorist coverage with limits of $100,000 per person and $300,000 per accident. The question posed was whether the survivors of an insured decedent had one collective claim for wrongful death or whether each survivor had a separate claim. The court held each survivor had a separate claim and the separate claims could not be combined and limited to the single person limit in the insured's underinsured motorist coverage.[3] Based upon this authority, Builders Transport contends the claims of the survivors of Alan Scott constitute three separate covered claims and not one collective covered claim.

The *Wood* opinion was a four to three decision of the Ohio Supreme Court. The dissent stated the majority had misinterpreted the legislative intent of the Ohio Wrongful Death Statute and the statute should be interpreted to provide only one cause of action for the recovery of damages flowing from the death of the decedent.[4] We note this dissent because Builders Transport relies upon the case and the *Wood* opinion has raised much subsequent discussion and disagreement. For the reasons stated herein, we find the *Wood* case to be of little assistance in this matter.

In 1989, the Ohio Supreme Court again addressed the wrongful death statute and its relationship to insurance coverage in *Burris v. Grange Mut. Companies.*[5] Sanford Burris was killed in an automobile accident with an insured of Grange Mutual. Burris's administrator entered into settlement negotiations with Grange Mutual. Burris was survived by a number of relatives. The Grange Mutual policy provided liability coverage up to $100,000 per person and $300,000 per occurrence. The issue before the Ohio Supreme Court was whether the liability coverage was limited to $100,000 or $300,000 because of the number of beneficiaries. In a four-one-two decision, the majority opinion held *Wood* inapplicable because *Wood* dealt with an interpretation of the wrongful death

---

[3] *Id.* at 88, 526 N.E. (2d) at 1091.
[4] *Id.* at 92, 526 N.E. (2d) at 1094.
[5] *Burris v. Grange Mut. Companies*, 46 Ohio St. (3d) 84, 545 N.E. (2d) 83 (1989).

statute in conjunction with an interpretation of the Ohio underinsured motorist statute and insurance policy language attempting to limit the statutory mandate of coverage.[6] The majority opinion held an automobile liability insurance provision that limited coverage for all damages arising out of bodily injury, including death, sustained by one person to a single limit of liability was a valid restriction.[7] The two dissenters asserted *Wood* should be applied and the contractual restrictions in a liability policy should not be allowed to restrict the number of claims that can be made under the wrongful death statute.[8]

Debate over *Wood* did not cease. In 1990, the Ohio Supreme Court again addressed the ramifications of *Wood* in a liability insurance context. *Cincinnati Ins. Co. v. Phillips* was a three-one-three decision of the court.[9] The insurance policy involved was a split limits liability policy. The policy contained the following language:

> The limit of liability shown in the Declarations for 'each person' for bodily injury liability is our maximum limit of liability *for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for 'each person' the limit of liability shown in the Declarations for 'each accident' for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.*[10] (emphasis in original)

The limit for each person was $100,000 and for each accident was $300,000.

Three members of the court decided *Wood* applied. They held each person entitled to recover damages under the wrongful death statute had a separate claim and such separate claims could not be made subject to the single person limit of liability in a tortfeasor's liability insurance policy.[11] One justice concurred in the judgment but not the opinion. He

---

[6] *Id.* at 86-87, 545 N.E. (2d) at 87, 88.

[7] *Id.* at 85, 545 N.E. (2d) at 85.

[8] *Id.* at 95, 545 N.E. (2d) at 94.

[9] *Cincinnati Ins. Co. v. Phillips*, 52 Ohio St. (3d) 162, 556 N.E. (2d) 1150 (1990).

[10] *Id.* at 164, 556 N.E. (2d) at 1152.

[11] *Id.* at 164, 556 N.E. (2d) at 1154.

held wrongful death claimants do have separate claims under the wrongful death statute but an insurance company may apply a single limit to separate claims arising out of a single bodily injury provided the limitation is clearly and unambiguously stated. This justice found the limit in the policy was not clearly and unambiguously stated because the limit applied only to damages "for bodily injury" and claims for wrongful death are not claims "for bodily injury" although they may be claims "arising out of bodily injury."[12] Finally, three members of the court dissented with two members citing the *Burris* opinion and one member stating he found no ambiguity in the policy.[13]

In its most recent opinion the Ohio Supreme Court has expressly limited the holding of *Wood.*[14] The court was asked to construe the language of a liability insurance policy in a wrongful death case. The insured's automobile liability policy provided for $50,000 coverage for bodily injury occurring to each person in an accident and total liability for bodily injury arising from each accident of $100,000. Karen Rose was killed in an auto accident with the insured. The administrator of her estate brought a wrongful death action in Ohio. The issue was whether the policy limit for the accident was $50,000 or $100,000.

In a four to three decision, the court reviewed the terms of the insurance policy and limited the holding of *Wood.* The majority opinion stated:

> [W]e further limit the holding in *Wood v. Shepard* and find it applicable only to those instances where the policy limitations in uninsured or underinsured motorist provisions do not track the corresponding limitation on liability coverage, and are ambiguous on their face. Accordingly, an automobile insurance policy may apply a single limit to separate claims arising out of a single bodily injury, notwithstanding the provisions of [the wrongful death statute], provided that such policy limitation tracks the corresponding limitation on liability coverage, and is unambiguously stated.[15]

---

[12] *Id.*

[13] *Id.* at 165, 166, 556 N.E. (2d) at 1154, 1155.

[14] *State Farm Auto. Ins. Co. v. Rose,* 61 Ohio St. (3d) 528, 575 N.E. (2d) 459 (1991).

[15] *Id.* at 532, 575 N.E. (2d) at 462.

The majority cited the *Burris* decision and further indicated it was of no consequence that the action was a wrongful death action since the policy language clearly and unambiguously set forth a limitation of a single limit to separate claims arising out of a single bodily injury.[16]

Based upon our review of the Ohio decisions, the *Wood v. Shepard* case does not provide clear guidance to this court in construing the concept of a "covered claim" under the statutory language in S.C. Code Ann. Section 38-31-20. The *Wood* case and its progeny have dealt with split limit insurance policies, either in the liability or underinsured context. The cases since *Wood* reflect a strong division of opinion among the justices of the Ohio Supreme Court. The latest decision places a limit on the holding of *Wood* which explicitly ties interpretation of the number of claims under the Ohio wrongful death statute and recovery under a split limit insurance policy to the exclusionary language of the policy in question.[17] The Carriers Insurance policy was not a split limit policy. The *Wood v. Shepard* decision is not relevant.

We, therefore, turn to the question of the intention of the South Carolina Legislature in the adoption of the language in the South Carolina Property and Casualty Insurance Guaranty Association Act. The Act is silent on wrongful death actions. Likewise, it does not contain specific language relating to a personal injury action. This court must interpret the only language used which is the term "covered claim" as defined in S.C. Code Ann. Section 38-31-20(6) (Rev. 1989). The section defines "covered claim" as "an unpaid claim . . . which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if the insurer is an insolvent insurer. . . ." Our appellate courts have not interpreted this term but our Supreme Court has recognized the function of the Guaranty Association is to provide protection for insureds in the event their insurance carriers become insolvent.[18] The parties stipulate that but for the insolvency of Carriers Insurance the set-

---

[16] *Id.*

[17] *Id.*

[18] *S.C. Property and Casualty Ins. Guar. Ass'n v. Carolina Roofing and Sheet Metal Contractor's Self-Insurer's Fund*, 303 S.C. 368, 401 S.E. (2d) 144 (1991).

tlement by Builders Transport would have been fully covered under the terms of the policy.

As we view the case, we find the automobile accident led to four separate causes of action. Mrs. Scott and her two children each had causes of action for their personal injuries. Further, there was a separate cause of action for the death of Mr. Scott. Mrs. Scott and her children were the multiple beneficiaries of this action but inherently there was only one claim for his death as defined under the term "covered claim" in S.C. Code Ann. Section 38-31-20(6). We believe this interpretation is consistent with the Ohio Wrongful Death Statute which provides for an action for wrongful death brought by the personal representative for the benefit of the statutory beneficiaries.[19] Since SCIGA paid Builders Transport the full amount of statutory coverage, SCIGA was entitled to judgment. We affirm the trial court.

## II.

The second matter addressed by the trial court was the "Mintz-Petrie" case. The trial court held SCIGA was required to pay prejudgment interest to Builders Transport on the sum of $99,824 from August 21, 1987. SCIGA appeals this decision. We affirm.

The parties stipulated to the facts. On May 24, 1985, a Builders Transport truck was involved in an accident with a motorcycle operated by Clayton Evan Mintz. Gregory Petrie was a passenger on the motorcycle. As a result of the accident, Mintz and Petrie filed separate lawsuits against Builders Transport. Both of these claims would have been covered under the terms of the insurance policy issued by Carriers Insurance Company. After Carriers Insurance became insolvent, SCIGA assumed its statutory role with respect to "covered claims" that otherwise would have been paid by the insolvent insurer.

Builders Transport negotiated a settlement of both the Mintz and Petrie claims for a total of $675,303.68. The Petrie claim was settled for $536,036.05 and the Mintz action was settled for $139,267.63. According to its complaint, Builders

---

[19] *Ohio Rev. Code Ann.* § 2125.02 (1991); *see also Florida Ins. Guaranty Ass'n Inc. v. Cole,* 573 So. (2d) 868 (Fla. Dist. Ct. App. 1990).

Transport alleged SCIGA refused to reimburse it for $99,824 which was an additional amount SCIGA owed to Builders based upon mathematical calculations. SCIGA denied the allegations. Approximately fifteen months later and shortly before the case was heard on summary judgment, the parties entered into a written stipulation in which SCIGA conceded liability and stated the amount owed was $99,824. The parties further stipulated that if prejudgment interest was owed the interest would be calculated from August 21, 1987. The trial court found prejudgment interest at the legal rate was due although the written order does not cite authority for the holding.

SCIGA is a nonprofit unincorporated legal entity created by the legislature.[20] Its powers and duties are defined by statute.[21] One of the duties of SCIGA is to pay "covered claims" against insolvent insurers.[22] The parties have not cited any statute in the South Carolina Property and Casualty Insurance Guaranty Association Act which addresses the question of the award of prejudgment interest in a dispute between an insured of an insolvent insurer and SCIGA over the amount of reimbursement due to the insured. The Act does provide SCIGA "is considered the insurer to the extent of its obligation on the covered claims and, to this extent, has all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent. . . ."[23]

As a general rule, prejudgment interest is not recoverable on an unliquidated claim in the absence of agreement or statute.[24] A claim is liquidated if the sum claimed is certain or capable of being reduced to a certainty.[25] The claim by Builders Transport is liquidated because it is capable of being reduced to certainty by simple mathematical calculation. If Builders Transport had sought to recover under its insurance contract with its insurer, Carriers Insurance Company, it would have been entitled to interest as an ele-

---

[20] S.C. Code Ann. § 38-31-40 (Rev. 1989).
[21] Section 38-31-60.
[22] Sections 38-31-20(6) and 38-31-60(a).
[23] Section 38-31-60(b).
[24] *Dibble v. Sumter Ice and Fuel Co.*, 283 S.C. 278, 322 S.E. (2d) 674 (Ct. App. 1984).
[25] *Id.*

ment of damages.[26] Absent an indication the Legislature intended to exempt SCIGA from the general rule, we agree with the trial court that SCIGA is liable for prejudgment interest in this case.

The decision of the trial court is

Affirmed.

GARDNER and BELL, JJ., concur.

---

[26] *Cf. Jacobs v. American Mut. Fire Ins. Co.*, 287 S.C. 541, 340 S.E. (2d) 142 (1986) (property damage claim); *Republic Textile Equip. v. Aetna Ins. Co.*, 293 S.C. 381, 360 S.E. (2d) 540 (Ct. App. 1987) (property damage claim).