513 S.E.2d 851

Lewis F. HOLMES, III, d/b/a Lewis F. Holmes and
Son, Lewis F. Holmes, Inc., Appellants,

v.

Kathy D. McKAY, Stelling and Associates, United States
Fidelity and Guaranty Company, Wynn B. Seigler,
and Seigler Insurance Agency, Defendants,

of whom United States Fidelity and Guaranty
Company is the, Respondent.

No. 2952.

Court of Appeals of South Carolina.

Heard Jan. 14, 1999.
Decided March 1, 1999.
Rehearing Denied May 8, 1999.

434

E. LeRoy Nettles, Sr., of Nettles, Turbeville & Reddeck, of Lake City, for appellants.

Stephen P. Groves, Sr., Bradish J. Waring & Stephen L. Brown, all of Young, Clement, Rivers & Tisdale, of Charleston, for respondent.

HOWELL, Chief Judge:

Lewis F. Holmes, d/b/a Lewis F. Holmes & Son (Holmes), seeks reimbursement from United States Fidelity & Guaranty Company (USF & G) for costs incurred in settling and defending a migrant workers' lawsuit. The circuit court granted USF & G summary judgment and denied summary judgment to the other defendants. Holmes appeals. We affirm in part, reverse in part, and remand.

## FACTS

In the light most favorable to Holmes, the facts are as follows.

Holmes approached Wynn B. Seigler of the Seigler Insurance Agency (Seigler) to procure farm liability insurance. Seigler lacked personal access to a farm liability market at that time but contacted Kathy D. McKay, d/b/a Stelling & Associates (McKay), on Holmes's behalf. McKay held an agent's license from USF & G and planned to use USF & G as the insurance carrier.

Seigler and McKay met with Holmes at his farm to discuss a potential farm liability policy (the Policy). At the initial meeting, Seigler and McKay inspected Holmes's farm, including the migrant workers' camps and dwellings. Holmes told both Seigler and McKay he "needed to be protected against all claims by migrant workers, any and all claims." Seigler and McKay assured him of such coverage.

Based on the meeting with Holmes, McKay, on behalf of USF & G, issued Holmes a USF & G insurance binder on May 20, 1993 indicating broad coverage for general farm liability from June 1, 1993 to June 1, 1994. In a letter dated May 20, 1993 (the 5/20/93 letter), McKay and Seigler wrote that "[i]n accordance with your request, we have arranged for insurance protection to become effective 05/20/93 on all properties as scheduled on the enclosed binder.... Meanwhile, coverage is in force just as though you have a policy in your hands."

USF & G subsequently issued the Policy pursuant to this binder. Holmes paid the required premium and received the Policy several weeks later, after the occurrence of the events giving rise to the migrant worker's lawsuit. The Policy listed Stelling and Associates as "agent."

The Policy stated:

We will pay those sums that the "insured" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.... No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the ADDITIONAL COVERAGES.

On October 1, 1993, certain migrant workers brought a civil action against Holmes alleging he violated their rights under the Migrant Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C.A. § 1801 *et seq.* (West 1999), and breached an employment contract. Holmes talked with McKay and Seigler about the suit. Both assured Holmes that he was covered. Nonetheless, USF & G subsequently sent Holmes a letter denying coverage. After settling the lawsuit, Holmes initiated this action on December 20, 1995.

## LAW/ANALYSIS

The circuit court's order granted USF & G summary judgment because the Policy's language did not cover the claims against Holmes, USF & G was not bound by either Seigler's or McKay's representations in meeting with Holmes, and public policy prevented USF & G from insuring against violations of the AWPA.[1] We disagree with the circuit court's

---

1. The AWPA provides for both criminal penalties and a civil cause of action. 29 U.S.C.A. §§ 1851, 1854 (West 1999).

second and third conclusions. We hold that there are sufficient facts in dispute to create a question of fact as to whether USF & G was bound by McKay's representations in meeting with Holmes. Furthermore, there is a question of fact as to whether Holmes's actions giving rise to the migrant workers' claims were intentional.

"Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Baird v. Charleston County,* 333 S.C. 519, 511 S.E.2d 69 (1999). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *McNaughton–McKay Elec. Co. v. Andrich,* 324 S.C. 275, 279, 482 S.E.2d 564, 566 (Ct.App.1997). "Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts" or when "further inquiry into the facts is desirable to clarify the application of the law." *Tupper v. Dorchester County,* 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). Because summary judgment is such a drastic remedy, it "should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues." *Baughman v. American Tel. and Tel. Co.,* 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991) (quoting *Watson v. Southern Ry. Co.,* 420 F.Supp. 483, 486 (D.S.C.1975), *aff'd* 542 F.2d 1170 (4th Cir.1976)).

## I.

We subject insurance policies to general rules of contract construction because an insurance policy simply amounts to a contract between the insurer and the insured. *See Flagstar Corp. v.. Royal Surplus Lines,* 332 S.C. 182, 189, 503 S.E.2d 497, 501 (Ct.App.1998). In the absence of an ambiguity, we interpret and enforce a policy's terms according to their plain and ordinary meaning. *See Nationwide Mut. Ins. Co. v. Commercial Bank,* 325 S.C. 357, 360, 479 S.E.2d 524, 526 (Ct.App.1996). "[I]f the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended

by the parties." *Diamond State Ins. Co. v.. Homestead Indus.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995).

■ The Policy covers "those sums that the 'insured' becomes legally obligated to pay as damages because of *'bodily injury'* or *'property damage'* to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the ADDITIONAL COVERAGES." (emphasis added). No relevant additional coverages are provided. The Policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person and includes death resulting from any of these at any time." "Property damage means: (a) physical injury to tangible property, including all resulting loss of use of that property ... or (b) Loss of use of tangible property that is not physically injured."

Neither the migrant workers' complaint against Holmes nor Holmes's complaint in this action alleged "bodily injury" or "property damage" as defined in the Policy. Holmes merely alleged the Policy requires USF & G to defend him in a lawsuit under the AWPA, and absent such defense, indemnify him for his costs associated with settling and defending the lawsuit himself. However, the Policy's plain language covers only "bodily injury" and "property damage," neither of which covers damages from lawsuits under the AWPA. *Nationwide,* 325 S.C. at 360, 479 S.E.2d at 526 (noting policy terms define insurer's obligations, and prohibiting enlargement by judicial construction).

Therefore, because the policy's plain language covers only "bodily injury" or "property damage," the circuit court properly determined the policy did not cover Holmes's claim.

## II.

■ Insurance companies are bound by the representations and acts of their agents acting within the scope of their authority. *See ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 327 S.C. 238, 242, 489 S.E.2d 470, 472 (1997) ("[T]he authorized acts of an agent are the acts of the principal."). Thus, in some situations, an agent's assurance of a particular type of coverage can obligate an insurer to provide the promised coverage, even if the coverage is not included in the

Policy.[2] *See Hagins v. Aetna Life Ins. Co.*, 75 S.C. 225, 227–28, 55 S.E. 323, 323–24 (1906) (holding that agent acted within the scope of his authority and bound the insurer to a modification of the initial policy); *Crosby v. Protective Life Ins. Co.*, 293 S.C. 203, 208, 359 S.E.2d 298, 301 (Ct.App.1987) ("A court of equity may reform a contract where the mistake is ... unilateral and has been induced by the fraud, deceit, misrepresentation, concealment of imposition in any form of the party opposed in interest to the reformation without negligence on the part of the party claiming the right, or where the mistake is accompanied by very strong and extraordinary circumstances showing imbecility or something which would make it a great wrong to enforce the agreement.").

■ Usually, whether an agency relationship exists and the scope of the alleged agent's authority are questions of fact for the jury. *See American Fed. Bank v. Number One Main Joint Venture*, 321 S.C. 169, 173–74, 467 S.E.2d 439, 442 (1996) (agency relationship); *Hiott v. Guaranty Nat'l Ins. Co.*, 329 S.C. 522, 530, 496 S.E.2d 417, 421 (Ct.App.1997) (extent of agent's authority).

With reference to the proof of agency, ... the declarations of an agent alone as to his agency are insufficient to prove agency, but if there are other corroborating facts, agency then becomes a question for the jury. His statements are admissible and competent as circumstances in connection with other competent evidence to prove the legal relationship of principal and agent.

The relationship of agency need not depend upon express appointment and acceptance, but may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case.

. . .

---

**2.** If either Seigler or McKay is an agent of USF & G with authority to bind, there is evidence that Holmes understood his insurance to cover the migrant workers' claims and that Seigler and McKay, who Holmes thought was representing USF & G, both assured Holmes of that coverage. Therefore, if there is evidence of agency and authority to bind, then, because there is evidence that the Policy should be reformed, the trial court erred in granting summary judgment in favor of USF & G.

But[,] in order to be relevant[,] the alleged principal must, in some way, directly or indirectly be connected with the circumstances. The agent must have assumed to represent the principal and to have performed the acts in his name and on his behalf.

*City of Greenville v. Washington Am. Baseball Club,* 205 S.C. 495, 504–05, 32 S.E.2d 777, 780–81 (1945) (citations omitted); *accord Fuller v. Eastern Fire & Cas. Ins. Co.,* 240 S.C. 75, 83, 124 S.E.2d 602, 606 (1962) ("[A]gency may not be established solely by the declarations and conduct of the alleged agent, but such declarations and conduct are admissible as circumstances in connections with other evidence tending to establish the agency.").

Nevertheless, the law makes a distinction between insurance brokers and insurance agents.

A broker is ordinarily one who acts as a middleman between the insured and insurer and who solicits insurance from the public under no employment from any special company, but having secured an order, either places the insurance with a company selected by the insured or with a company selected by the broker himself.

A broker is ordinarily employed by a person seeking insurance, and when so employed is to be distinguished from the ordinary insurance agent who is employed by an insurance company to solicit and write insurance in the company.

Where one has no agency license with the insurer, and is requested to place the business, he is a broker.

Whether a broker represents the insurer or the insured depends upon the facts in each case. Generally, an insurance broker is the agent of the insured, and not the insurer. The mere fact that he receives a commission from the insurer for placing the insurance does not change his character as an agent of the insured.

... [T]he insurance broker is primarily the agent of the person first employing him, and[,] thus[,] where he is employed to procure insurance, he is the agent of the insured.

. . .

As a general rule a broker acting for the insured has no authority to bind the insurer. The fact that the insurer

furnished the broker an application blank which was given to the person requesting coverage does not make the broker an agent of the insurer in issuing the policy.

*Allstate Ins. Co. v. Smoak,* 256 S.C. 382, 392–93, 182 S.E.2d 749, 754 (1971).

However, "[t]he terms agent and broker are not mutually exclusive. Under certain circumstances, a broker may be an agent for an insurance company." *Hiott,* 329 S.C. at 530, 496 S.E.2d at 422 (citation omitted). By statute, "[a] person who: ... takes or transmits other than for himself an application for insurance or a policy of insurance to or from an insurer, ... whether these acts are done by an employee of an insurer or at the instance or request of an insurer, must be an agent of the insurer for which the act is done or the risk is taken." S.C.Code Ann. § 38–43–10 (1989). Even if, by reason of section 38–43–10, a broker is converted into an agent of the insurer, the extent of the broker's authority as the insurer's agent must still be determined. *Hiott,* 329 S.C. at 530, 496 S.E.2d at 421.

 Additionally, "[a]n insurance agent who is not owned or controlled by an insurance company and who is not preclud-. ed from representing any number of insurance companies is an independent insurance agent...." 44 C.J.S. *Insurance* § 180 (1993). Although a few cases come close,[3] we can find

---

3. In *Republic Textile Equip. Co. v. Aetna Ins. Co.,* 293 S.C. 381, 383, 360 S.E.2d 540, 541 (Ct.App.1987), this Court dealt with an independent insurance agency that was "authorized to place insurance coverage with approximately twenty different companies." That case did not decide whether the authorization was evidence of agency and authority to bind. In that case, the insurance company canceled the insured's policy. *Id.* at 384, 360 S.E.2d at 542. After conferring with the independent agent, the insurer issued a replacement policy. *Id.* This Court held that the insurer's conferring with the independent agent with respect to the replacement policy meant that the independent agent acted, with respect to the replacement policy, as the insurer's agent with authority to bind. *Id.* at 386–87, 360 S.E.2d at 543. While that case relied on evidence independent of the independent agent's licenses with the insurer, it said nothing about whether this evidence in addition to the license was required in order to prove agency. *Id.*

In *Smoak,* the broker was deemed not to be an agent of the insurer because there was no evidence of the scope of his statutory authority. 256 S.C. at 392, 182 S.E.2d at 753. The broker in *Smoak,* though, was not licensed with the insurer, as supported by his consultation of a

no South Carolina case deciding the issue of whether an independent insurance agent licensed to sell insurance with many different companies operates, with respect to policies ultimately issued by the insurer due to the agent's work, as an agent of those insurers with authority to bind. Nonetheless, generally an independent insurance agent is considered the agent of the insured. *Id.* But, "for some purposes[,] an independent agent is the insurance company's agent and not insured's agent or broker, when the company is one of the agent's licensed companies." *Id.* Today, we hold that independent insurance agents' licenses with several insurers are, with respect to policies issued on the agents' efforts, evidence of agency with and authority to speak for the insurers for which they are licensed. While the license also acts as evidence of authority to bind the insurer, this rule is consistent with the requirements of section 38–43–10 in that the licensing of the agent acts as evidence that the agent's acts were done "at the instance or request of" the insurer. Thus, the question becomes whether there is a genuine issue of material fact as to the agency status of either Seigler or McKay.

### A.

█ USF & G argues that, because Holmes approached Seigler, Seigler is Holmes's agent, not USF & G's. We agree.

Seigler was an independent insurance agent, not licensed to sell insurance for USF & G. The parties agree that Holmes approached Seigler to buy farm liability insurance. Moreover,

---

licensed representative of the insurer in order to finally place the coverage. *Id.* at 389, 182 S.E.2d at 752.

In *Hiott*, we found insufficient evidence to prove that an independent agency was the agent of the insurer. 329 S.C. at 530–31, 496 S.E.2d at 422. In that case, the only evidence linking the agency with the insurer was the representations of a third party. *Id.* Clearly, the representations of the third party are not attributable to the insurer. The opinion does not discuss whether a license with the insurer would have been sufficient evidence of agency and authority to bind. *Id.*

As a result, because none of these cases approach the issue of whether a license with an insurance company is evidence of both agency with and authority to speak for the insurer regarding policies issued due to the alleged agent's work, they are not binding precedent on this issue. *See Hutto v. Southern Farm Bureau Life Ins. Co.,* 259 S.C. 170, 173, 191 S.E.2d 7, 8–9 (1972) (holding that a case is not binding precedent on an issue not mentioned in the opinion).

there is no evidence that Seigler was acting "at the instance or request of" USF & G. Although the 5/20/93 letter was signed by both McKay and Seigler, the policy eventually issued only lists Stelling and Associates as the "agent." Consequently, Seigler acted as a broker whose representations could not bind USF & G.

## B.

■ USF & G also claims that McKay is not its agent, because she was an independent agent first approached by Seigler, who was first approached by Holmes. We disagree.

McKay met with Holmes as an independent agent "representing Stelling and Associates licensed with ... USF & G." She further noted that, "[i]f you represent [a] company, you're licensed with them as an agent." After meeting with Holmes, McKay, acting on behalf of USF & G, issued a binder indicating broad coverage for farm liability. The Policy listed Stelling and Associates as "agent ." From these facts, we can infer that USF & G's ultimate issuance of the Policy was done in reliance on this binder. Arguably, USF & G's issuing the Policy validated that McKay was its agent with authority to speak on its behalf, at least with respect to the Policy. *Cf. Fuller*, 240 S.C. at 85–87, 124 S.E.2d at 608 (noting that, in response to appellant's arguing the seller of the insurance was not the appellant's agent, the appellant's actions, including, among other things, ultimately issuing an insurance policy based on the seller's representations and listing the seller as "agent" on the policy, ratified the seller's conduct and insurer was bound by the seller's representations to cover the event at issue despite contract provisions indicating no coverage). In construing all the facts and inferences in favor of Holmes, we conclude there is a question of fact as to whether McKay is USF & G's agent so that her representations regarding coverage for the migrant workers' claims are binding on USF & G.

## III.

■ USF & G also argues that, because Holmes settled a civil suit alleging intentional acts on his part, any claim to

coverage is void as contrary to public policy. In its order, the circuit court held that

> as a matter of law ... Holmes'[s] illegal acts ... are not insurable ... as a matter of public policy. An insurance policy is void if its intent is to indemnify the insured against liability for his criminal acts. The AWPA is a criminal statute and Holmes seeks indemnification against liability for [his] violation of that criminal statute. Accordingly, any alleged insurance coverage is void.

We disagree.

Holmes's alleged actions were not necessarily criminal or intentional. To the contrary, the migrant workers' action was civil, not criminal. Although the migrant workers' complaint alleged intentional violations of the AWPA, it also alleged unintentional breach of contract actions. Consequently, because the record does not establish that, as a matter of law, Holmes's actions were criminal or intentional, there is a question of fact as to whether coverage in this case would violate public policy.

For the foregoing reasons, the circuit court improperly granted summary judgment to USF & G. Hence, the circuit court's order in this case is

**AFFIRMED IN PART, REVERSED IN PART, and RE-MANDED.**

ANDERSON and STILWELL, JJ., concur.