**ERIE INSURANCE GROUP, Appellee,**

v.

**Barry A. SHUE, Individually, as Parent and Natural Guardian of Matthew Shue, and as Administrator of the Estate of Patti J. Shue, Appellant.**

Superior Court of Pennsylvania.

Argued April 13, 1999.

Filed Nov. 19, 1999.

William E. Haggerty, Lancaster, for appellant.

William E. Benner, Jr., Lancaster, for appellee.

Before McEWEN, President Judge, and FORD ELLIOTT and OLSZEWSKI, JJ.

McEWEN, President Judge:

¶ 1 This appeal has been taken by appellant, Barry Shue, individually, as parent and natural guardian of his son, Matthew Shue, and as administrator of the estate of his deceased wife, Patti Shue, from the final order which modified, in part, the decision of an arbitration panel concerning UIM coverage provided by a policy issued to appellant by appellee, Erie Insurance Group. We conclude, for reasons set forth hereinafter, that the decision of the arbitrators must be reinstated since the arbitrators properly concluded that the claim of Matthew Shue for emotional distress suffered as a result of witnessing the death of his mother is to be included within the $500,000 per person policy limit applicable to Matthew, and not within the $500,000 per person policy limit applicable to his mother, Patti Shue.

¶ 2 The relevant facts have been recounted by appellant as follows:

This case arises out of an automobile accident occurring at approximately 9:00 a.m. on September 15, 1996. At that time, Patti Jean Shue (hereinafter, "Patti") [was killed] and her 3 year-old son, Matthew Shue (hereinafter, "Matthew"), [was injured].

As a result of the accident, Barry Shue (hereinafter, "Barry"), Patti's husband and Matthew's father, has asserted claims individually, as the administrator of Patti's estate (hereinafter, "the estate") and, due to Matthew's status as a minor, as his parent and natural guardian. As the administrator of Patti's estate, Barry has asserted a claim under Pennsylvania's survival statute. As Patti's husband, Barry has asserted a claim under Pennsylvania's wrongful death statute, for the loss of his wife. And finally, on behalf of Matthew, Barry has asserted a claim under Pennsylvania's wrongful death statute, for the loss of his mother, a claim for Matthew's bodily injuries and the emotional distress aris-

ing therefrom, and a claim for the negligent infliction of emotional distress to Matthew, for witnessing his mother's death.

Based upon [the driver's] status as an uninsured motorist, Barry sought to recover damages under his own automobile insurance policy, which was issued by Erie Insurance Group (hereinafter, "appellee"). The policy, which names both Barry and Patti as insureds, provides uninsured motorist coverage for bodily injury or death in the amount of $250,000.00 per person and $500,000.00 per accident. Both of the Shues' vehicles are insured under this policy, which states that these coverages can be stacked. Finally, Matthew is covered by the policy, which provides protection for "[a]ny relative" and/or "[a]nyone else who is entitled to recover damages because of bodily injury to any person protected by [the] coverage."

As mandated in the insurance policy issued by appellee to Barry and Patti, which provides for UM arbitration pursuant to the Arbitration Act of 1927, the dispute over the amount of applicable coverage was submitted for review to an arbitration panel.[1] After both sides briefed the issues, the panel handed down the following decision:

It is the decision of the arbitrators that the quoted policy language limits all claims for wrongful death and survival arising out of the death of Patti Shue to one per person limit. Thus, Matthew and Barry Shue's claim under the Wrongful Death Act and the claim of the Estate of Patti Shue under the Survival Act must all be paid out of one per person limit and that therefore the maximum available to pay all of these claims is the stacked limit of $500,000.00 per person.

It is the arbitrators' decision that the language quoted is not ambiguous and

1. Appellee has paid appellant the $500,000 policy limits applicable to the coverage pay-

able as a result of the death of Matthew's mother.

that it limits the claims for wrongful death and survival to one per person limit, no matter how many claimants there may be under the wrongful death action and despite [the] fact that the wrongful death and survival claims are separate causes of action. It is further the arbitrators' decision that such an interpretation of the language of the policy is not violative of public policy or the Motor Vehicle Financial Responsibility Law.

It is the further decision of the arbitrators that the claim of Matthew Shue for emotional distress which has resulted from witnessing the death of his mother is an injury to Matthew Shue directly and therefore a separate per person limit of $500,000.00 is available to compensate Matthew Shue for his own bodily injury, any emotional distress he may have as a result of his own bodily injuries and Matthew Shue's emotional distress resulting from witnessing the death of his mother.

From this decision, appellant filed a petition to modify and/or correct arbitration award and brief in support thereof, as did appellee, pursuant to the Arbitration Act of 1927.

On August 7, 1998, the Honorable Michael J. Perezous entered the following order:

### ORDER

The decision of the arbitrators is modified as follows consistent with the foregoing opinion.

1. In addition to the damages recoverable under the Wrongful Death Act and those recoverable under the Survival Act being "covered", if at all, by the same per person policy limit[9], Matthew Shue's emotional distress and any related physical manifestations thereof from witnessing his mother's death are deemed included within the same per person policy limit.[10]

2. Damages associated with Matthew Shue's impact-caused bodily harm as well as his emotional distress and any related physical manifestations thereof arising from his own physical injuries are included within a per person limit separate from that addressed in Pt. 1 above.[11]

---

[9] This restates the arbitrators' decision regarding coverage resulting from bodily harm to *decedent Patti Shue.*

[10] This modifies the arbitrators' decision assigning Matthew's distress damages, whether arising from witnessing bodily harm to his mother or from his own bodily injuries, to the per person policy limit attributable to him.

[11] See FN # [10]

¶ 3 Appellant, in this appeal from the final order entered by the trial court, presents two questions for our consideration, namely:

Whether the language contained in Erie's insurance policy is vague and/or ambiguous and therefore should be construed against the insurer and in favor of the insured?

Whether the language contained in Erie's insurance policy violates public policy and therefore should be declared invalid as a matter of law?

■ ¶ 4 This Court, when reviewing the trial court's ruling on a petition to vacate or modify an arbitration award, may only reverse for an abuse of discretion or error of law. *MGA Insurance Company v. Bakos,* 699 A.2d 751, 752 (Pa.Super.1997). Since the policy at issue provided for arbitration pursuant to the Pennsylvania Arbitration Act of 1927, the trial court was authorized to review the award of the arbitrators under the following standard:

(2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a

jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S. § 7302(d)(2). *See: Midili v. Erie Insurance Group*, 1999 Pa.Super. 17 at ¶ 4 (filed Jan. 22, 1999; reargument granted Apr. 1, 1999); *Nationwide Ins. Co. v. Calhoun*, 430 Pa.Super. 612, 635 A.2d 643, 646 (1993).

¶ 5 The arbitrators' decision assigned all claims for wrongful death and survival arising out of the death of Patti Shue to one per person limit, and assigned the claim of Matthew Shue for emotional distress arising from witnessing the death of his mother and his claim for bodily injury and any emotional distress arising therefrom to a separate per person limit. The trial court determined that Matthew's claim for emotional distress from witnessing his mother's death was a derivative claim and modified the arbitrators' decision to require that Matthew's emotional distress damages arising from witnessing the death of his mother be included in the per person policy limit available to Patti Shue. Without explicitly stating that the award was "contrary to law," the trial court wrote: "The arbitrators mistakenly joined this distress claim with Matthew's separate personal injury claim and the emotional distress claim based [upon his own personal injuries] in making all three claims eligible for compensation under his separate $500,000 per person limit." Thus we proceed, pursuant to the foregoing standard, to determine whether the ruling of the trial court was an abuse of discretion or error of law. *MGA Insurance Company v. Bakos, supra.*

¶ 6 The express terms of the Erie policy provide for a per person limit which encompasses all damages to the victim as well as all damages to others which result from the victim's injuries:

LIMITS OF PROTECTION – Limitations of Payment

If coverage is purchased on a "split limits" basis, **your declarations** will show a *per* PERSON and *per* ACCIDENT limit for uninsured and/or underinsured motorists bodily injury. The *per* PERSON limit for bodily injury is the most **we** will pay for damages arising out of bodily injury or death to one person in any one accident. The *per* ACCIDENT limit for bodily injury is the most **we** will pay for damages arising out of bodily injury or death to all persons resulting from any one accident, subject to the *per* PERSON limit.

*If an individual's damages derive from bodily injury to another person injured in the accident or the death of another person killed in the accident, we will pay only for such derivative damages within the per PERSON limit available to the person injured or killed in the accident.*

¶ 7 Since the policy issued to appellant provides for stacking of uninsured motorist benefits, the coverages provide for a $500,000 per person limit for each insured injured in the accident and a $1 million per accident overall limit regardless of the number of claimants or victims. While appellant concedes that he cannot recover more than one million dollars from appellee, he contends that he has three separate claims, each of which has a $500,000 limit, subject, of course, to the $1 million dollar cap. Specifically, appellant argues that the policy:

... places derivative damages in a category of their own, and the language in no way indicates that the damages recoverable by the injured person, or by the estate if he or she was killed, as well as those that derive therefrom, such as damages recoverable under a wrongful death action, are blended together and subject to a single per person limit.

\* \* \* \*

Based upon the above, then, it is appellant's position that $500,000.00 is available for the survival claim brought by Patti's estate (direct claim), $500,000.00 is available for the bodily injury claim

brought on behalf of Matthew and the emotional distress arising therefrom (direct claim), and $500,000.00 is available for the wrongful death claims brought by Barry and Matthew and the negligent infliction of emotional distress claim arising out of Matthew witnessing his mother's death (derivative claims). These claims, in the aggregate, would be subject to the $1 million per accident limit contained within the policy.

¶ 8 Recently, this Court held that a claim for negligent infliction of emotional distress, made by a wife who had observed her husband struck by an automobile as he stood beside his parked vehicle, constituted a separate claim against the tortfeasor's liability policy, and was not a derivative claim subject to the same per person liability limit as the claim which the wife/administratrix asserted against the tortfeasor's insurer. *Anthem Casualty Insurance Co. v. Miller*, 729 A.2d 1227 (Pa.Super.1999). Accordingly, in the instant case, the arbitrators correctly included the negligent infliction of emotional distress claim of Matthew in the per person policy limit available to Matthew, rather than in the per person policy limit available to his mother. Thus, that portion of the trial court order which modified the decision of the arbitrators must be vacated and the decision of the arbitrators reinstated.

¶ 9 However, we are unable to agree with the argument of appellant that a separate $500,000 limit is applicable to the claim for wrongful death asserted by appellant on behalf of himself and his son Matthew, rather than a derivative claim which must be satisfied from the per person limit of UM coverage applicable to Patti Shue. We have carefully reviewed the argument of appellant, but are not persuaded of its merit. As the opinion of the distinguished Judge Michael J. Perezous has thoroughly addressed and properly rejected this argument, it would be purposeless for us to elaborate upon that discus-

sion and, therefore, we but reiterate the relevant portion of his able opinion:

The parties direct our attention to the following language in the "Limit of Protection" section at pp. 6–7 of the policy [emphases in original]:

The *per* PERSON limit for bodily injury is the most **we** will pay for damages arising out of bodily injury or death to one person in any one accident. The *per* ACCIDENT limit of bodily injury is the most **we** will pay for damages arising out of bodily injury or death to all persons resulting from any one accident, subject to the *per* PERSON limit.

*If an individual's damages derive from bodily injury to another person injured in the accident or the death of another person killed in the accident, **we** will pay only for such derivative damages within the per PERSON limit available to the person injured or killed in the accident.*

Further, the crux of the dispute is the meaning of "within" in the second portion of the italicized provision.

The plain meaning[3] of the italicized section is sufficiently clear to this court that we will not parse the language beyond a few general observations: "derivative damages" is a term previously defined in the same sentence in which it appears; such damages are expressly included within, not merely limited to, the amount of per person damages available to the injured person or her estate for direct harm; thus, derivative damages are subsumed, by definition, within the injury recovery from which they derive such that payment of policy limits on the direct injury leaves nothing to compensate any derivative claim.[4] We consider this case governed by Judge Cavanaugh's finding in *Koenig v. Progressive Insurance Co.*, 410 Pa.Super. 232, 599 A.2d 690 (1991), *allo. denied*, 531 Pa. 640, 611 A.2d 712 (1992), that derivative claims such as loss of consortium do not receive separate per person limits as

damages are limited to those available to compensate the direct injury to a spouse on which they are based. . . .

\* \* \* \*

. . . It is contrary to both reason and common sense to conclude that failure of the policy to state that "the aggregate of each individual's derivative damages is capped at the same amount available to the person injured" means that all derivative claims have recourse to individual pots of money the contents of which match the amount potentially recoverable by a direct claimant. Quite simply, the injury of two persons is what controls under the Erie policy for *per person limit* purposes, regardless how many additional derivative claims occur to the legal mind.

\* \* \* \*

In sum, denial of separate per person limits to each of Shue's three (or four) claims is firmly grounded on insurance policy language and in no way prevents assertion of those claims. Only the total amount of money recoverable on each claim is limited. . . .

---

[3] An axiom of contract law requires that words be given their plain meaning and insurance policies, comprising a subset of contract law, are to be construed according to the ordinary meaning of their words not otherwise defined. *Riccio v. American Republic Ins. Co.*, 453 Pa.Super. 364, 683 A.2d 1226 (1996), *aff'd*. 550 Pa. 254, 705 A.2d 422 (1997).

[4] This straightforward interpretation stands alone. We note parenthetically, however, that the policy reinforces it in language closely preceding the quoted sections:

We will pay no more than the limit(s) shown on the declarations for one auto in any one accident as explained below. <u>It makes no difference how many persons we protect, autos we insure, claims are made or autos are involved in the accident.</u> [underlining added]

The effect of the underlined sentence is to emphasize that coverage is driven by the number of injured persons and not the number of claims. Moreover, it is clear that

without the attached Pennsylvania Endorsement, the policy here specifically excludes stacked coverage, which does apply in this case.

¶ 10 It is upon this clear and certain rationale that we affirm the order of the trial court in all respects except as to that portion of the order which modified the arbitrators' decision and thereby included Matthew Shue's emotional distress claim within the per person policy limit applicable to the death of his mother. We, therefore, vacate the order in part, and reinstate the decision of the arbitrators which included Matthew Shue's claim for emotional distress suffered as a result of witnessing his mother's death in the per person policy limit available to Matthew.

¶ 11 Order affirmed in part, vacated in part and the decision of the arbitrators reinstated so as to include the claim of damages by Matthew Shue for emotional distress arising from witnessing his mother's death in the per person policy limit available to Matthew. Jurisdiction relinquished.