**Valley Medical Facilities Inc. v.
Pennsylvania Property and Casualty
Insurance Guaranty Association**

38

C.P. of Beaver County, no. 11963 of 2003.

*Marshall J. Tindall,* for plaintiff.
*Lise Luborsky,* for defendant.

KUNSELMAN, *P.J.,* December 14, 2004—Motions for judgment on the pleadings have been filed on behalf of the plaintiffs, Valley Medical Facilities Inc. (the hospital) and Tri-State Obstetrics and Gynecology and James A. Crozier M.D. (collectively called Dr. Crozier) as well as the defendant, Pennsylvania Property and Casualty Insurance Guaranty Association (PPCIGA). The motions for judgment on the pleadings raise an issue of first impression. We articulate the issue as follows: *is the maximum liability of PPCIGA to be determined by the number of persons injured by medical malpractice without regard to the number of medical providers who have been determined to have been causally negligent and without regard to the number of casualty insurance policies that had been issued to those medical providers by insurance companies which have since become insolvent?* We answer that question in the negative. Our reasons follow.

The material facts which form the basis of this dispute are mostly undisputed and are hereinafter set forth. The

hospital is the successor in interest to The Medical Center (TMC). Randy Ross was born at TMC on March 29, 1997. His parents filed an action against TMC and Dr. Crozier at no. 10387 of 1999 claiming that he had sustained injuries caused by the negligence of employees of TMC as well as the negligence of Dr. Crozier. At the time of the alleged negligence, both TMC and Dr. Crozier were covered by separate casualty insurance policies issued by PHICO Insurance Company with the following limits: TMC, primary limits of $300,000; TMC, excess limits of $5,000,000; and Dr. Crozier, primary limits of $200,000. In addition to these policies, TMC was covered by the MCare Fund for $900,000 in excess of its primary limits and Dr. Crozier was covered by the MCare Fund for $1,000,000 in excess of his primary limits.

On February 1, 2002, PHICO was declared insolvent by the Pennsylvania Department of Insurance and placed in liquidation pursuant to an order issued by the Commonwealth Court. As a result of this liquidation, all covered claims under the PPCIGA against PHICO's insureds were transferred to PPCIGA, including the claim made on behalf of Randy Ross. The lawsuit filed on behalf of Randy Ross against TMC and Dr. Crozier was tried before a jury which returned a verdict on April 30, 2003, against TMC and Dr. Crozier in the amount of $4,100,000. The jury allocated 90 percent of the causal negligence to TMC and 10 percent of the causal negligence to Dr. Crozier. That verdict was subsequently molded to add delay damages and to deduct the statutory non-duplication of recovery offset due PPCIGA. The verdict, as molded, was $4,846,571.60.

Although post-trial motions were filed, they were not pursued and TMC and Dr. Crozier requested PPCIGA to tender $300,000 on behalf of TMC's primary coverage and $200,000 on behalf of Dr. Crozier's primary coverage to the MCare Fund and to pay $300,000 on behalf of TMC's excess coverage. PPCIGA refused, contending that it was only liable for $300,000. PPCIGA therefore tendered the difference between the statutory setoff and $300,000 to the MCare Fund. Further demand was made upon PPCIGA to pay its share of the delay damages and post-verdict interest. PPCIGA refused this demand as well, contending that its liability was limited to $300,000 less the statutory offset.

In order to satisfy the verdict, the hospital agreed to pay the full amount which remained due, including delay damages and post-verdict interest, after deducting the amount paid by PPCIGA and the amounts payable by the MCare Fund. The hospital also took an assignment from Dr. Crozier of his rights against PPCIGA.[1] The hospital then initiated this declaratory judgment action against PPCIGA seeking a declaration that PPCIGA is liable under the Pennsylvania Property and Casualty Insurance Guaranty Act to pay an additional $300,000 on behalf of TMC's excess limits and an additional $200,000 on behalf of Dr. Crozier's primary limits as well as its share of delay damages and post-verdict interest.

In order to enter an order declaring the rights of the parties, we must first resolve the procedural issue of

---

1. PPCIGA's answer to the complaint states that it is without knowledge or information to form a belief as to the truth of these allegations after reasonable investigation. Therefore, technically these "facts" are disputed.

whether judgment on the pleadings can be entered. Such a disposition in an action for declaratory judgment is authorized because the practice and procedure in a declaratory judgment action is to follow, as nearly as may be, the rules governing civil actions. Pa.R.C.P. 1601(a). The rules governing civil actions authorize such judgment or order as shall be proper on the pleadings. Pa.R.C.P. 1034(b). However, judgment on the pleadings can only be granted when there are no material facts in dispute. *Travelers Casualty & Surety Company v. Castegnaro,* 565 Pa. 245, 772 A.2d 456 (2001). Moreover, the court can only consider the pleadings and any documents properly attached thereto. *Id.* As we observed in footnote one, there are disputed material facts in the pleadings. Consequently, we cannot enter judgment on the pleadings for either party.

Nevertheless, it is clear from the allegations in PPCIGA's motion for judgment on the pleadings, as well as statements in its brief, that there are no disputed facts. Therefore, we can treat both parties' motions as motions for summary judgment and consider those documents as well as the pleadings. Cf. *Wujcik v. Yorktowne Dental Associates Inc.,* 701 A.2d 581, 583 (Pa. Super. 1997) (Trial judge should have treated defendant's objection to the plaintiff's offer of proof as either a motion for summary judgment or for judgment on the pleadings instead of entering a nonsuit prior to taking any testimony); *DiGregorio v. Keystone Health Plan East,* 840 A.2d 361, 365 (Pa. Super. 2003) (en banc) (Superior Court treated a motion to dismiss granted prior to taking testimony as either a motion for judgment on the pleadings or a motion for summary judgment). In the interest of judicial

economy and because both parties have asked us to decide the issue, we will do so.

The obligation of PPCIGA to pay is set out in the Act which provides, in relevant part:

"(b) The association shall have the following powers and duties:

"(1)(i) To be obligated to pay *covered claims* existing prior to the determination of the insolvency. . . . Such obligation shall be satisfied by paying to the claimant an amount as follows:

"(A) An amount not exceeding $10,000 per policy for a covered claim for the return of unearned premium.

"(B) An amount not exceeding $300,000 per claimant for all other covered claims. . . .

"(4) To investigate claims brought against the association and adjust, compromise, settle and pay covered claims to the extent of the association's obligation and deny all other claims." 40 P.S. §991.1803(b)(1)(i) and (4). (emphasis added)

The word "claimant" is not defined in the statute, but the phrase "covered claim" is defined, in relevant part, as follows:

"(1) An unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article . . .: . . .

"(3) The term shall not include any first-party claim by an insured whose net worth exceeds $25,000,000 on

December 31 of the year in which the insurer becomes an insolvent insurer: . . ." 40 P.S. §991.1802 "Covered claim" (1)(i) and (3).

The parties agree that Randy Ross had a covered claim as that phrase is defined by the Act. The parties disagree as to whether the hospital and Dr. Crozier had a covered claim. If the word "claimant" was defined in the Act, the uncertainty would undoubtedly be removed. Since it is not, we must decide whether the insured can be a claimant who has a covered claim under the Act.

PPCIGA argues that the $300,000 limit is expressly limited to payment of that sum "per claimant for all other claims" and that the $10,000 limit for unearned premiums is "per policy." PPCIGA says that distinction is clear from the statutory language and must be observed. Therefore, all claims other than for unearned premiums are limited per claimant. PPCIGA then relies upon a Commonwealth Court case which it claims holds that the injured party in the third-party claim is the "claimant" and the insured of the insolvent insurer is the insured and not a claimant, citing *Main Line Health Inc. v. Pennsylvania Medical Professional Liability Catastrophe Loss Fund,* 738 A.2d 66, 70 (Pa. Commw. 1999), *affirmed per curiam,* 566 Pa. 4, 777 A.2d 1048 (2001).

In that case, the petitioner proceeded in Commonwealth Court's original jurisdiction against PPCIGA seeking to recover damages resulting from PPCIGA's refusal to pay more than $300,000 in cases where physicians and their professional corporations had separate and independent liability policies issued by companies then insolvent. PPCIGA demurred on the basis of the

immunity granted by 40 P.S. §991.1818 (no liability of the association for action taken in the performance of its duties). PPCIGA argued that it satisfied its duty to pay "covered claims" by paying $300,000 per claimant. Commonwealth Court said a physician is not a "claimant" and the physician's professional corporation is not a claimant but they are "insureds." 738 A.2d at 70.

PPCIGA argues that we must follow *Main Line Health Inc.* and hold that neither the hospital nor Dr. Crozier are claimants but are insureds and therefore it has satisfied its obligation under the Act. The hospital argues that we are not bound by *Main Line Health Inc.* for several reasons. First, it argues that *Main Line* was decided in the Commonwealth Court's original jurisdiction and not its appellate jurisdiction. The hospital did not cite any authority for this proposition and we have found none. In fact, the only restrictions we have found relate to unreported opinions of the court and single judge opinions, even if reported. See *section 414 Internal Operating Procedures of the Commonwealth Court,* 210 Pa. Code §67.55. *Main Line Health Inc.* was a panel decision which was reported. Therefore, even if it was in the court's original jurisdiction, it still is precedent.

Nevertheless, we believe there are three reasons why the precedent is not binding. First, the case cited by Commonwealth Court in support of that conclusion did not hold that a physician and his professional corporation are insureds and not claimants. Our examination of *Pennsylvania Osteopathic Medical Association v. Foster,* 134 Pa. Commw. 368, 579 A.2d 989 (1990), *appeal dismissed,* 525 Pa. 500, 582 A.2d 319 (1990), disclosed that the court only discussed claims made by a patient and claims

made by a physician against the insurer as those terms were defined in the Health Care Services Malpractice Act. The court was not concerned with the meaning of "claimant" under the PPCIGA.

Second, our Supreme Court has since held that both first-party and third-party claimants may possess "covered claims" for purposes of the Act and so has, we believe, overruled the Commonwealth Court's holding sub silentio. *Bell v. Slezak,* 571 Pa. 333, 343, 812 A.2d 566, 572 (2002). In fact, the Supreme Court mentioned *Main Line Health Inc.'s* rejection of the position that insureds of the insolvent insurer are claimants under the Act and said its per curiam affirmance of that case did not constitute approval of the Commonwealth Court's reasoning. *Id.,* n.7.

Third, since "claimant" is not defined by the Act, it must be given its common meaning. 1 Pa.C.S. §1903(a). The common meaning of "claimant" is "one that asserts a right or title." Webster's Collegiate Dictionary, Tenth Edition. It is also defined as "[o]ne who claims or asserts a right, demand or claim." Black's Law Dictionary, Sixth Edition. Both the hospital and Dr. Crozier have claims to be indemnified against liability to Randy Ross and have asserted those claims. Therefore, they are claimants who may have "covered claims" under the Act.

We now must determine if they have a covered claim. As we stated earlier, TMC had two liability policies with PHICO. The first policy provided for primary coverage in the amount of $300,000 and the second provided for $5,000,000 in excess liability coverage. Thus, if PHICO had not become insolvent, PHICO would have paid the

first $300,000 of TMC's liability, the MCare Fund the next $900,000 of TMC's liability and PHICO the balance of TMC's liability up to $5,000,000. Dr. Crozier had primary coverage in the amount of $200,000 with PHICO. Thus, if PHICO had not become insolvent, it would have paid the first $200,000 of Dr. Crozier's liability and the MCare Fund the balance of his liability up to $1,000,000. In addition, because the liability of TMC and Dr. Crozier is joint and several, each was liable to Randy Ross for the full amount of the verdict as molded. If either had paid the full amount, each would have had a claim against the other to be indemnified up to the percentage of causal negligence which was attributed to them. Thus, payment or obligations to make payment have been made by them and it can be said that their claims to be indemnified against liability are unpaid. There is no contention that the claims do not arise out of and are within the coverage of the PHICO policies. Thus, the hospital and Dr. Crozier have covered claims within the meaning of the Act. There can be more than one claimant who has a covered claim. *Keystone Aerial Surveys Inc. v. Pennsylvania Property & Casualty Insurance Guaranty Association,* 574 Pa. 147, 829 A.2d 297 (2003).

Once a party is found to possess a covered claim for purposes of the Act, it is then the obligation of PPCIGA to pay the claim unless the Act provides otherwise. *Bell v. Slezak, supra* at 345, 812 A.2d at 573. In this connection, the only provision in the Act which arguably provides otherwise is the section which provides for non-duplication of recovery. It provides, in relevant part, as follows:

"Any person having a claim under an insurance policy shall be required to exhaust first his rights under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, *whether it is a first-party claim* or a third-party claim, *and shall include, without limitation,* accident and health insurance, workers' compensation, Blue Cross and Blue Shield and *all other coverages except for policies of an insolvent insurer.* Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under other insurance." 40 P.S. §991.1817(9). (emphasis added)

The hospital is a "person" within the meaning of that term under the Act. 40 P.S. §991.1802. Both its primary and excess policies were written by PHICO. Since policies of an insolvent insurer are excluded from the definition of "a claim under an insurance policy," the excess policy is not within the non-duplication of recovery provisions and PPCIGA is obligated to pay that covered claim as well.

We reject PPCIGA's various arguments against our conclusion and will discuss those arguments separately. First, PPCIGA stresses the language in section 991.1803 (b)(1)(i) and argues that the Act distinguishes between unearned premium claims and all other covered claims. PPCIGA contends that the $10,000 limit for unearned premiums is "per policy" and the $300,000 limit for all other covered claims is "per claimant" and that distinction is based on the clear language of the Act and must be observed. Therefore, the fact that the hospital had an excess policy does not increase PPCIGA's "per claimant" limit.

This is a bootstrap argument. Obviously a claim for unearned premiums must be limited to "per policy" because premiums are charged per policy. This does not mean that the legislature intended to limit all other covered claims to one claimant. This is made clear by our Supreme Court in *Bell v. Slezak, supra* and *Keystone Aerial Surveys Inc. v. PPCIGA, supra.*

Second, PPCIGA argues that *Main Line Health Inc.* has not been overruled by *Bell v. Slezak* because the comments made by the court in that case as to whether an insured can be a claimant were dicta. We disagree that they were dicta. In that case, the victim of medical malpractice settled his claim against his physician, expecting the payment of the maximum coverage from the physician's liability carrier. However, prior to disbursement of the funds, the liability carrier was declared insolvent. PPCIGA refused to pay the $200,000 because the victim had medical expenses in excess of that amount paid by his health insurer. He then sought to enforce the settlement agreement.

In deciding whether or not he had a "covered claim," the Supreme Court said: "In the medical malpractice setting, . . . a threshold issue is whether the term refers to the insured-physician's potential claim against PPCIGA pursuant to its policy with an insolvent malpractice carrier, or to a claim brought by the patient-plaintiff against the physician, such as the case here." 571 Pa. at 343, 812 A.2d at 572. The court then mentioned that other jurisdictions are divided concerning this question and, having surveyed the approaches, were persuaded by the approach of the New Hampshire Supreme Court and said "[h]aving determined that both first-party and third-party

claimants may possess 'covered claims' for purposes of the Act, we next consider the nature of PPCIGA's obligations in relation to the Bell's claim since it is their claim for funding of the settlement that is at issue here." 571 Pa. at 345, 812 A.2d at 573. In its review of other jurisdictions, the court had observed that some had held that only insureds were claimants while others had held that both an insured and a third-party plaintiff were claimants. Thus, the court had to decide whether the claimant under the Pennsylvania Act was the insured or both the insured and the patient. Thus, the decision on the issue was not dicta. At least one member of the Supreme Court agrees with us that it was not dicta. See *Elliott-Reese v. Medical Professional Liability Catastrophe Loss Fund,* 574 Pa. 705, 706 n.1, 833 A.2d 138, 139 n.1 (2003).

Finally, PPCIGA points to several sections of the Act where, it claims, the Act itself distinguishes between the claimant and the insured. It points to the disjunctive "claimant or insured" used twice in definition of "covered claim" in 40 P.S. §991.1802(1)(i) and the "place of residence of the insured" in 40 P.S. §991.1817(b). However, we believe that, instead of establishing that the claimant and insured are different, these phrases are examples of the "multiple ambiguities and apparent inconsistencies" referred to by our Supreme Court in *Bell v. Slezak,* 571 Pa. at 342, 812 A.2d at 571.

For the foregoing reasons, we will declare that the maximum liability of PPCIGA is to be determined by considering two covered claims of the hospital and one covered claim of Dr. Crozier. However, the maximum liability must be computed without regard to delay damages or post-verdict interest in this case. It is true that

our Superior Court has observed that PIGA, the predecessor of PPCIGA, can be charged with legally imposed enhancements to a claim against an insolvent insurance carrier. See *Russell v. Pennsylvania Insurance Guaranty Association,* 339 Pa. Super. 458, 489 A.2d 251 (1985). It is further true that legally imposed enhancements may include post-verdict interest and delay damages. However, it is also true that the maximum liability of PPCIGA is the lesser of the policy limits of the insolvent carrier and $300,000 per claimant for each covered claim. 40 P.S. §§991.1802 and 991.1803(b)(1)(i)(B). In the case at bar, the total verdict before adding delay damages was $4,100,000. The policy limits of PHICO totaled $800,000 ($200,000 for Dr. Crozier's primary coverage, $300,000 for TMC's primary coverage and $300,000 for TMC's excess coverage). The total of this liability, when added to the total liability of the MCare Fund, amounts to $2,700,000. Thus, even by exhausting the liability of PPCIGA, there is not sufficient funds with which to pay the entire original verdict amount. Since PPCIGA's liability is limited to the lesser of the coverage or $300,000, PPCIGA is not liable for any interest or delay damages. *Elliott-Reese v. Medical Professional Liability Catastrophe Loss Fund,* 805 A.2d 1253 (Pa. Commw. 2002), *affirmed per curiam,* 574 Pa. 705, 833 A.2d 138 (2003).

An appropriate order is attached.

## ORDER

For the reasons set forth in the attached opinion, the court declares as follows:

(A) Pennsylvania Property and Casualty Insurance Guaranty Association is obligated to pay the following

52

additional amounts in order to satisfy its obligation to The Medical Center, now Valley Medical Facilities Inc. and James A. Crozier M.D.:

(1) The Medical Center's excess limits of $300,000; and

(2) Dr. James A. Crozier's primary limits of $200,000;

(B) Pennsylvania Property and Casualty Insurance Guaranty Association is not obligated to pay any amounts to the plaintiffs for post-verdict interest or delay damages.